NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4295-12T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GEORGE A. MYERS, a/k/a G,

    Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION**

**September 8, 2015**

**APPELLATE DIVISION**

Submitted March 2, 2015 — Decided September 8, 2015

Before Judges Sabatino, Guadagno and Leone.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 12-03-248.

Joseph E. Krakora, Public Defender, attorney for appellant (Amira R. Scurato, Assistant Deputy Public Defender, on the brief).

John J. Hoffman, Acting Attorney General, attorney for respondent (Sara M. Quigley, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

LEONE, J.A.D.

Defendant George A. Myers appeals his conviction for possession of a handgun discovered during his arrest for a marijuana offense.  His primary argument on appeal, raised for the first time, asserts that as a result of the New Jersey

Compassionate Use Medical Marijuana Act (CUMMA), <u>N.J.S.A.</u> 24:6I-1 to -16, the odor of marijuana can no longer serve as a basis for probable cause that a marijuana offense is being committed. We disagree, and affirm.

## I.

The following facts are drawn from the testimony at the suppression hearing and the factual findings of Judge James R. Swift. After 1:00 a.m. on January 7, 2012, the New Jersey State Police received a report of three gunshots near an intersection in Fairfield Township, Cumberland County. Trooper Matthew Gore was dispatched and arrived two minutes later. Gore observed three parked cars near a residence where there was a party. Gore approached the only occupied car, containing three males to inquire about the reported gun shots. Defendant rolled down the driver's window of the car, and denied seeing or hearing anyone firing a gun. Gore then asked defendant if he had attended the party. Defendant replied he had just arrived to pick up his cousins, but then said he had been in the residence for a short time.

After conversing with defendant for one to two minutes, Trooper Gore continued up the street to the residence and spoke to the young female holding the party. She said she had heard three gunshots, but it was unclear who fired the shots.

While walking back to his vehicle and looking for shell casings, Trooper Gore heard a woman a couple of houses away yelling at defendant's vehicle, which had pulled into her driveway, telling him to get his car out of her driveway. Both because of defendant's dispute with the homeowner, and because defendant's movement of the car to a new location seemed suspicious, Gore approached defendant's car to speak with him.

Trooper Gore testified that he then detected the odor of burnt marijuana coming from the car.[1] As a result, Gore asked defendant and then the other two males to exit the car. All three were arrested and searched. In the search incident to arrest, Gore found a small baggie of marijuana in an exterior pocket of defendant's jacket, and a handgun in the interior pocket.

Defendant was charged with second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); and the disorderly persons offense of possession of marijuana, N.J.S.A. 2C:35-10(a)(4). Defendant moved to suppress both the gun and drugs.

At the suppression hearing, defendant testified that, after his first encounter with Trooper Gore, another officer told him to move his car, and then told him to pull into the driveway

---

[1] Gore had learned the smells of burnt and raw marijuana at the Police Academy, and had smelled burnt marijuana thirty to forty times during his three-and-a-half-year career.

while the officer spoke to defendant's cousin who had approached on foot. Defendant admitted he had smoked marijuana in the past. However, he testified that he had not smoked marijuana in his car before he got to the scene, that no one who got in his car smelled of marijuana, and that no one had smoked marijuana in his car between his first and second encounters with Gore.

At the suppression hearing, there was no dispute about the lawfulness of the first encounter between Trooper Gore and defendant, in which defendant admittedly was not detained and was free to leave. Judge Swift found that, in the second encounter, Gore lawfully approached the car to make a field inquiry. The court credited Gore's testimony that he smelled the odor of burnt marijuana. The court also credited defendant's testimony that no one in the car smoked marijuana between their first and second encounters "with cops all . . . around." The court found that because Gore's sensitivity to the odor of marijuana could exceed that of a marijuana smoker, such as defendant, Gore could smell marijuana that defendant said he did not smell. The court concluded that Gore permissibly asked defendant to exit the car and lawfully discovered the handgun and marijuana.

After the trial court denied the suppression motion, defendant pled guilty to second-degree unlawful possession of a

handgun without a permit. Pursuant to the plea agreement, the State dismissed the marijuana charge, and successfully moved to reduce the mandatory sentence to five years in prison with one year of parole ineligibility. The court imposed that sentence. Under the plea agreement, defendant was granted bail pending appeal of the denial of suppression. See R. 3:5-7(d).

Defendant appeals his April 12, 2013 judgment of conviction, raising the following arguments:

> POINT I - AS MARIJUANA IS NO LONGER PER SE CONTRABAND, THE CASE LAW REGARDING "PLAIN SMELL" MUST BE MODIFIED ACCORDINGLY AND THE EVIDENCE SEIZED IN THE INSTANT CASE MUST BE SUPPRESSED. (Not Raised Below).

> POINT II - NO PROBABLE CAUSE EXISTED FOR THE TROOPER'S SECOND APPROACH AND INTERROGATION OF THE DEFENDANT.

We must hew to our "deferential standard of review." State v. Rockford, 213 N.J. 424, 440 (2013). "[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." Ibid. (internal quotation marks omitted). "Those findings warrant particular deference when they are substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Ibid. (alteration in original;

internal quotation marks omitted). "Thus, appellate courts should reverse only when the trial court's determination is so clearly mistaken that the interests of justice demand intervention and correction." State v. Gamble, 218 N.J. 412, 425 (2014) (internal quotation marks omitted).

## II.

We first address defendant's second argument: that Trooper Gore could not approach defendant's car a second time without probable cause or reasonable suspicion. Gore testified he approached defendant's car to speak with him. "The police do not violate a citizen's rights '"by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen[.]"'" State v. Privott, 203 N.J. 16, 24 (2010) (quoting State v. Maryland, 167 N.J. 471, 483 (2001) (quoting Florida v. Royer, 460 U.S. 491, 497, 103 S. Ct. 1319, 1324, 75 L. Ed. 2d 229, 236 (1983))). Such field inquiries "do not constitute searches or seizures for purposes of the warrant requirement." Ibid. They may be conducted "'without grounds for suspicion,'" as long as the subject is not chosen "for impermissible reasons such as race." State v. Rodriquez, 172 N.J. 117, 126 (2002) (quoting Maryland,

supra, 167 N.J. at 483); see also State v. Elders, 192 N.J. 224, 246 (2007).

Here, Trooper Gore testified he wished to ask about defendant's dispute with the homeowner and his suspicious movement of the car to a new location.[2] No claim has been made that Gore initiated this second encounter for any impermissible reason such as race. Moreover, Gore detected the odor of marijuana as he was approaching defendant's car, before he detained or questioned defendant.[3] Thus, Gore's approach was a permissible field inquiry that did not implicate defendant's constitutional rights.

---

[2] Because Gore was not required to have reasonable suspicion to conduct a field inquiry, we need not consider defendant's contention that an officer directed him to park in the driveway. In any event, it is not asserted that Gore was aware whether any officer had done so. Courts "'consider the totality of the information available to the officer at the time of the conduct' to evaluate whether a constitutional defect exists. 'Information acquired subsequently cannot be used to either bolster or defeat the facts known at the time.'" State v. Presley, 436 N.J. Super. 440, 456 (App. Div. 2014) (citations omitted). Gore was also unaware of defendant's later testimony that he used marijuana but no one had smoked marijuana in the car between the two encounters.

[3] See State v. Shaw, 213 N.J. 398, 410 (2012) (a "field inquiry is transformed into an investigative stop or detention — a seizure 'within the meaning of the Fourth Amendment' — when 'a reasonable person would have believed that he was not free to leave'" (quoting United States v. Mendenhall, 446 U.S. 544, 557, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497, 509 (1980))); see also State v. Gibson, 218 N.J. 277, 291 (2014) (a field inquiry's questioning should not be "'harassing, overbearing, or accusatory in nature'").

Defendant argues that an officer smelling marijuana must be in a lawful vantage point. Defendant compares this case with State v. Cohen, 73 N.J. 331 (1977). However, in Cohen the officers did not detect the smell of marijuana until after they improperly opened or compelled the driver to open the doors of his van. Id. at 344. Here, Gore testified he smelled the odor of marijuana when he was walking on the public street, and before he asked defendant to exit the car. Thus, Gore lawfully smelled the odor of marijuana emanating from defendant's car.

### III.

At the suppression hearing, defendant's other claim was to challenge the "credibility as to whether or not the officer did or did not smell marijuana" when he approached defendant's car the second time. On appeal, defendant does not contest the trial court's credibility finding that Trooper Gore did smell the odor of burnt marijuana when he again approached the car.

Instead, defendant claims that possession of marijuana is no longer illegal in all instances, and that the "plain smell" doctrine no longer applies, after the passage of the CUMMA. Defendant did not raise this claim or even mention the CUMMA at the suppression hearing. However, the State does not argue that defendant's new claim was not properly preserved, and we detect no "factual shortcoming" in the record regarding defendant's new

claim. See State v. Robinson, 200 N.J. 1, 18-22 (2009). Accordingly, we will allow defendant to raise this claim under the plain error rule. R. 2:10-2. Because we find no error, we do not consider whether defendant meets the other requirements to show plain error. See State v. Koskovich, 168 N.J. 448, 529 (2001).

To address defendant's new claims, we consider: (A) the precedent of our Supreme Court and this court on the odor of marijuana and probable cause; (B) the CUMMA; and (C) the effect of the CUMMA on that precedent in the context of this case.

### A.

"'New Jersey courts have [long] recognized that the smell of marijuana itself constitutes probable cause "that a criminal offense ha[s] been committed and that additional contraband might be present."'" State v. Walker, 213 N.J. 281, 290 (2013) (quoting State v. Nishina, 175 N.J. 502, 515-16 (2003) (quoting State v. Vanderveer, 285 N.J. Super. 475, 479 (App. Div. 1995))); accord, e.g., State v. Pena-Flores, 198 N.J. 6, 30 (2009); State v. Birkenmeier, 185 N.J. 552, 563 (2006); State v. Guerra, 93 N.J. 146, 150-51 (1983); State v. Legette, 441 N.J. Super. 1, 15 (App. Div. 2015); State v. Chapman, 332 N.J. Super. 452, 471 (App. Div. 2000); State v. Judge, 275 N.J. Super. 194, 201 (App. Div. 1994); State v. Sarto, 195 N.J. Super. 565, 574

(App. Div. 1984); <u>State v. Kahlon</u>, 172 <u>N.J. Super.</u> 331, 338 (App. Div. 1980), <u>cert. denied</u>, 454 <u>U.S.</u> 818, 102 <u>S. Ct.</u> 97, 70 <u>L. Ed.</u> 2d 88 (1981).[4]

These and other decisions have "'repeatedly recognized that . . . the smell of burning marijuana establishes probable cause that there is contraband in the immediate vicinity and that a criminal offense is being committed,' and that the detection of that smell satisfies the probable-cause requirement." <u>Walker</u>, <u>supra</u>, 213 <u>N.J.</u> at 287-88 & n.1. Here, the "smell of marijuana emanating from the automobile gave the officer probable cause to believe that it contained contraband." <u>Pena-Flores</u>, <u>supra</u>, 198 <u>N.J.</u> at 30.

In some of these cases, the odor of marijuana is described as "strong" or "overwhelming." <u>E.g.</u>, <u>id.</u> at 12, 30. Trooper Gore did not use such adjectives, but he detected the odor of

_____

[4] Similarly, the United States Supreme Court and other federal courts have long "recognized that the odor of an illegal drug can be highly probative in establishing probable cause for a search." <u>United States v. Caves</u>, 890 <u>F.</u>2d 87, 90 (8th Cir. 1989) (citing <u>Johnson v. United States</u>, 333 <u>U.S.</u> 10, 13, 68 <u>S. Ct.</u> 367, 92 <u>L. Ed.</u> 436 (1948)); <u>accord</u>, <u>e.g.</u>, <u>United States v. McCoy</u>, 200 <u>F.</u>3d 582, 584 (8th Cir. 2000). In addition, the federal courts have recognized a "'plain smell' doctrine," which "is simply a logical extension of the 'plain view' doctrine," and "allows a law enforcement officer to seize evidence of a crime" without a search warrant. <u>United States v. Angelos</u>, 433 <u>F.</u>3d 738, 747 (10th Cir. 2006). The issue before us is not the "plain smell" doctrine, but the use of the sense of smell to establish probable cause.

marijuana before he reached the vehicle. In any event, subject to any pertinent defenses, possession of any quantity of marijuana is an offense. N.J.S.A. 2C:35-10(a)(4); Vanderveer, supra, 285 N.J. Super. at 479. "'[T]he distinctive odor of burnt . . . marijuana'" is evidence of such possession. Nishina, supra, 175 N.J. at 516-17 (finding probable cause where the officer only smelled marijuana on his second encounter with the defendant). Thus, "a strong odor is [not] required"; detection of the "characteristic" "smell of burnt marijuana, by a trained and experienced State Trooper, emanating from the passenger compartment of a legally stopped motor vehicle, created probable cause to believe that a violation of law had been or was being committed." Judge, supra, 275 N.J. Super. at 197, 201, 203.

Hence, cases have held that the odor of marijuana gives "rise to probable cause 'to conduct a warrantless search of the persons in the immediate area from where the smell has emanated.'" Legette, supra, 441 N.J. Super. at 15 (quoting Vanderveer, supra, 285 N.J. Super. at 481); see, e.g., Pena-Flores, supra, 198 N.J. at 12 (an officer smelling marijuana in an automobile ordered the driver out of the car and searched him for drugs). Here, the search of defendant revealed he possessed marijuana and a handgun.

Moreover, because the smell of marijuana itself can suffice to furnish probable cause that a criminal offense has been committed, the smell of marijuana gave Trooper Gore the right to arrest defendant for committing an apparent marijuana offense in his presence.[5] "'The "in presence" requirement . . . is satisfied by the trooper's use of his sense of smell in much the same manner as if he had used his sight or hearing or touch[.]'" Legette, supra, 441 N.J. Super. at 29 (quoting Judge, supra, 275 N.J. Super. at 203).[6]

### B.

Defendant claims the New Jersey cases cited above must be modified due to the 2010 passage of the CUMMA. However, "'[p]ossession of marijuana' remains an offense" under New Jersey law. Legette, supra, 441 N.J. Super. at 29 n.9 (citing

---

[5] N.J.S.A. 40A:14-152.1 allows "arrest for any crime committed in [an] officer's presence." Also, N.J.S.A. 40A:14-152 provides that officers "upon view may apprehend and arrest any disorderly person or any person committing a breach of the peace." "Upon view" means "in the presence of the arresting officer." State v. Dangerfield, 171 N.J. 446, 460 (2002); see, e.g., Walker, supra, 213 N.J. at 291, 296 (holding officers could arrest a defendant smoking a marijuana cigarette in their presence, even though possession of a small quantity of marijuana is a disorderly persons offense).

[6] In addition, "N.J.S.A. 39:5-25 permits a police officer to effectuate an arrest for Chapter 4 traffic offenses occurring in the presence of the officer," including "[s]moking or knowingly possessing marijuana by the driver of the motor vehicle on the highway" in violation of N.J.S.A. 39:4-49.1. Judge, supra, 275 N.J. Super. at 203-04.

N.J.S.A. 2C:35-10(a)(3) (penalizing "more than 50 grams of marijuana"), and (4) (penalizing "50 grams or less of marijuana")). "Marihuana" is still classified as a controlled dangerous substance. N.J.S.A. 24:21-5(e)(10). Thus, its possession is prohibited by N.J.S.A. 2C:35-10(a). See N.J.S.A. 2C:35-2 (defining controlled dangerous substance).[7]

In the CUMMA, the Legislature intended that "a distinction be made between medical and non-medical uses of marijuana." N.J.S.A. 24:6I-2(e). The Legislature stated that "the purpose of this act is to protect from arrest, prosecution, property forfeiture, and criminal and other penalties, those patients who use marijuana to alleviate suffering from debilitating medical conditions[.]" Ibid. The CUMMA creates a limited exception allowing possession of marijuana for medical use by qualifying patients who obtain the appropriate registry identification card. N.J.S.A. 24:6I-6; N.J.S.A. 2C:35-18.

The CUMMA defines a "[q]ualifying patient" as a State resident "who has been provided with a certification by a physician pursuant to a bona fide physician-patient

---

[7] Similarly, the CUMMA "leaves untouched the criminal penalties for" the manufacture, distribution, and dispensing of marijuana, prohibited by N.J.S.A. 2C:35-5(a)(10)-(12) (addressing the penalties for "Marijuana"). State v. Wilson, 421 N.J. Super. 301, 310 n.4 (App. Div. 2011), certif. denied, 209 N.J. 98 (2012).

relationship." N.J.S.A. 24:6I-3; accord N.J.A.C. 8:64-1.2. The certification must be signed by the physician who has ongoing responsibility for, and must "attest[] to the physician's authorization for the patient to apply for registration for the medical use of marijuana." N.J.S.A. 24:6I-3; see N.J.A.C. 8:64-2.5; see also N.J.A.C. 13:35-7A.4. The patient must submit the certification and other required information to the Department of Health in order to obtain a registry identification card. N.J.S.A. 24:6I-4(a); see N.J.A.C. 8:64-2.2.[8]

The registry identification card "identifies a person as a registered qualifying patient." N.J.S.A. 24:6I-3; N.J.A.C. 8:64-1.2. The Department of Health must establish a registry listing "the persons to whom it has issued registry identification cards," and disclose the information to law enforcement agencies "as necessary to verify that a person who

---

[8] "Before issuing a registry identification card, the department shall verify the information contained in the application" by the patient. N.J.S.A. 24:6I-4(b). "The department may deny an application . . . if the applicant fails to provide the information required pursuant to this section, or if the department determines that the information was incorrect or falsified or does not meet the requirements of this act." Ibid.; see N.J.A.C. 8:64-2.2, -2.6. Otherwise, the department "shall issue a registry identification card, which shall be valid for two years, to a qualifying patient." N.J.S.A. 24:6I-4(a); see N.J.A.C. 8:64-3.1. The patient must inform the department of any change in the information on the registry identification card. N.J.S.A. 24:6I-4(e). Transfer or falsification of a registry identification card is a crime. N.J.S.A. 24:6I-9.

is engaged in the suspected or alleged medical use of marijuana is lawfully in possession of a registry identification card." N.J.S.A. 24:6I-4(f); see N.J.S.A. 24:6I-4(a).

A registered qualifying patient may engage in the "'[m]edical use of marijuana[,]' mean[ing] the acquisition, possession, transport, or use of marijuana . . . as authorized by [the CUMMA]." N.J.S.A. 24:6I-3; see also N.J.A.C. 8:64-1.2. A "[m]edical marijuana alternative treatment center" (ATC) may "provide registered qualifying patients with usable marijuana and related paraphernalia in accordance with the provisions of [the CUMMA]." N.J.S.A. 24:6I-3.

The CUMMA provides that "[t]he provisions of N.J.S.A. 2C:35-18 shall apply to any [registered] qualifying patient . . . acting in accordance with the provisions of [the CUMMA]." N.J.S.A. 24:6I-6(a); see also N.J.A.C. 8:64-13.11. N.J.S.A. 2C:35-18, as amended by the CUMMA, provides that "[i]f conduct is authorized by the provisions of [the CUMMA], that authorization shall, subject to the provisions of this section, constitute an exemption from criminal liability under this chapter or chapter 36[.]" Ibid.[9]

---

[9] Moreover, "[n]o person shall be subject to arrest or prosecution for constructive possession, conspiracy or any other offense for simply being in the presence or vicinity of the
(continued)

However, <u>N.J.S.A.</u> 2C:35-18 also makes clear that persons claiming that exemption must show they met the CUMMA's requirements. "It is an affirmative defense to any criminal action arising under this chapter or chapter 36 that the defendant is the authorized holder of an appropriate registration . . . or is otherwise exempted or excepted from criminal liability by virtue of any provision of [the CUMMA]." <u>Ibid.</u> "The affirmative defense established herein shall be proved by the defendant by a preponderance of the evidence." <u>Ibid.</u> However, "absence of such authorization shall not be construed to be an element of any offense in this chapter or chapter 36." <u>Ibid.</u> "It shall not be necessary for the State to negate any exemption set forth in this act or in any provision of Title 24 of the Revised Statutes in any complaint, information, indictment or other pleading or in any trial, hearing or other proceeding under this act." <u>Ibid.</u>

Moreover, the CUMMA does not permit any person, including a registered qualifying patient, to "operate . . . or be in actual physical control of any vehicle . . . while under the influence of marijuana," or to "smoke marijuana . . . in a private vehicle unless the vehicle is not in operation." <u>N.J.S.A.</u> 24:6I-8. "A

_____

(continued)
medical use of marijuana as authorized under [the CUMMA]."
<u>N.J.S.A.</u> 24:6I-6(e); <u>see also</u> <u>N.J.A.C.</u> 8:64-13.11(e).

A-4295-12T4

person who commits an act as provided in this section shall be subject to such penalties as are provided by law." Ibid.

C.

Here, defendant does not claim that he or anyone in his car was a qualifying patient who had a registry identification card, or even a physician's certification.[10] Because defendant has not shown that he was the "authorized holder of an appropriate registration" under the CUMMA, he cannot and does not assert that his possession of marijuana was exempt under the CUMMA. N.J.S.A. 2C:35-18. Moreover, defendant had just operated and was in physical control of his car when Trooper Gore approached and smelled the odor of burnt marijuana.

Instead, defendant argues the well-established New Jersey precedent allowing the odor of marijuana to establish probable cause is no longer good law after the CUMMA. He bases his argument on the assertion that marijuana is no longer "per se contraband."[11]

---

[10] The State represents that, at the time of defendant's arrest, the Department of Health had not yet established the registry, registration had not been opened to the patients, and there were no operating ATCs. Our decision does not depend on those representations.

[11] This term is used in forfeiture law. See In re Two Seized Firearms, 127 N.J. 84, 89-90, cert. denied, 506 U.S. 823, 113 S. Ct. 75, 121 L. Ed. 2d 40 (1992).

A-4295-12T4

However, under search and seizure law, probable cause can arise about objects that are not "per se contraband." Probable cause merely requires "a practical, common sense determination whether, given all of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found[.]'" State v. Moore, 181 N.J. 40, 46 (2004) (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527, 548 (1983)).

Defendant argues the CUMMA requires marijuana to be treated like alcohol. He cites State v. Jones, 326 N.J. Super. 234, 241 (App. Div. 1999). In Jones, we ruled that "the odor of alcohol [on a driver's breath], combined with [his] admission of consumption of one bottle of beer," was not "sufficient to establish probable cause to search the vehicle for open containers of alcohol" without a warrant. Id. at 237, 244-45. We noted that Judge "differentiated the smell of marijuana from the odor of alcohol emanating from either the passenger compartment or driver by pointing out that, unlike the use of marijuana, the use of alcohol is not a per se violation of the law." Id. at 241 (citing Judge, supra, 275 N.J. Super. at 202).

Here, we are not concerned with a warrantless vehicle search. Moreover, the odor of alcohol on a person's breath speaks to the contents of the person's gastrointestinal tract.

It may signify far less about the contents of the person's pockets and vehicle than the odor of marijuana wafting out of the vehicle.

Most importantly, alcohol is an entirely "'lawful'" product which may be purchased and consumed by any adult without a permit or license, and is legally available for sale from innumerable stores, restaurants, bars, and other establishments. See Nishina, supra, 175 N.J. at 516 (quoting Judge, supra, 275 N.J. Super. at 202). By contrast, the possession, consumption, and sale of marijuana remains illegal except in the instance of a registered qualifying patient who obtains medical marijuana from one of the limited number of ATCs. See Caporusso v. N.J. Dep't of Health & Senior Servs., 434 N.J. Super. 88, 95-96 (App. Div. 2014).

The CUMMA provides that possession of a registry identification card is an affirmative defense, not an element of the offense. N.J.S.A. 2C:35-18(a). "There is nothing irrational about inferring that [a registry identification card] would be produced if in fact it existed." Cf. State v. Ingram, 98 N.J. 489, 499 (1985); State v. McCandless, 190 N.J. Super. 75, 80 (App. Div.), certif. denied, 95 N.J. 210 (1983). Accordingly, we hold that absent evidence the person suspected of possessing or using marijuana has a registry identification

card, detection of marijuana by the sense of smell, or by the other senses, provides probable cause to believe that the crime of unlawful possession of marijuana has been committed. Thus, we reject defendant's argument.

We stress that this is not a situation where a person suspected of possessing or using marijuana has proffered to a law enforcement officer a registry identification card or other evidence that the person is a registered qualifying patient under the CUMMA. We note that the "Attorney General Medical Marijuana Enforcement Guidelines For Police" (Dec. 6, 2012),[12] advises that

> where it reasonably appears to a police officer that the CUMMA affirmative defense applies (e.g., the person in possession of marijuana presents a valid medical marijuana registry identification card and otherwise appears to be complying with all of the [CUMMA] statutory requirements), an officer should generally refrain from making an arrest, filing criminal charges, and/or seizing the marijuana or associated paraphernalia.
>
> [Id. at 6.]

However, the Attorney General's guidelines also advise that "the officer need not assume that the marijuana is medical

_____

[12]    Available    at    http://www.state.nj.us/lps/dcj/agguide/med_marijuana_enf_guide.pdf.

marijuana authorized by CUMMA," that it is the responsibility of the person to assert the affirmative defense, and that

> when an officer develops reasonable articulable suspicion or probable cause to believe that a marijuana offense is being or has been committed (e.g., a plain view observation or "plain smell" of marijuana), that reasonable articulable suspicion or probable cause does not dissipate merely because a suspect asserts that the detected marijuana is medical marijuana possessed in accordance with CUMMA.

[Id. at 8, 23.]

The Attorney General advises officers in that situation to "make appropriate inquiries of the person, and access other available sources of information" such as a database query of the person's registry status, "to determine whether the possession or use is in fact authorized under State law." Id. at 5-9, 24.

We need not address the propriety of the advice in the Attorney General's guidelines. Here, no claim was or is made that defendant or anyone in his car was a registered qualifying patient or otherwise authorized to possess marijuana under the CUMMA. In that situation, Trooper Gore's smell of the odor of marijuana emanating from defendant's car gave him probable cause, which justified his arrest of defendant.

We affirm the judgment of conviction. We remand to the trial court to address defendant's bail status within twenty days of this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21                                                        A-4295-12T4