**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2369-15T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAHLIL D. JACKSON,

    Defendant-Appellant.

_____

          Submitted April 5, 2017 — Decided June 14, 2018

          Before Judges Fuentes and Gooden Brown.

          On appeal from Superior Court of New Jersey,
          Law Division, Mercer County, Indictment No.
          14-06-0761.

          Joseph E. Krakora, Public Defender, attorney
          for appellant (Al Glimis, Assistant Deputy
          Public Defender, of counsel and on the brief).

          Christopher S. Porrino, Attorney General,
          attorney for respondent (Sara M. Quigley,
          Deputy Attorney General, of counsel and on the
          brief).

          The opinion of the court was delivered by

FUENTES, P.J.A.D.

Defendant Jahlil D. Jackson pled guilty to second degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b). On December 11, 2015, Judge Pedro J. Jimenez sentenced defendant to a term of eight years, with a four-year period of parole ineligibility as required under the Graves Act, N.J.S.A. 2C:43-6(c).[1]

Defendant now appeals raising the following arguments:

POINT I

IN VIEW OF CHANGES IN THE LAW DECRIMINALIZING THE SMOKING OF MEDICAL MARIJUANA AND IMMUNIZING SAID USERS, AS WELL AS PERSONS IN THE VICINITY OF LAWFUL SMOKERS OF MEDICAL MARIJUANA, THE ODOR OF BURNT MARIJUANA, BY ITSELF, DOES NOT CONSTITUTE PROBABLE CAUSE TO ARREST AND SEARCH EVERYONE IN AN AUTOMOBILE.

POINT II

THE EVIDENCE SEIZED FROM THE SEARCH OF THE CAR MUST BE SUPPRESSED BECAUSE THE CONSENT TO SEARCH WAS NOT VOLUNTARY AND BECAUSE THE CONSENT WAS TAINTED BY THE ILLEGAL ARREST.

POINT III

BECAUSE THE TRIAL COURT FAILED TO PROVIDE SUFFICIENT REASONS FOR THE SENTENCE IMPOSED AND IGNORED A MITIGATING FACTOR IN THE RECORD, AN EXCESSIVE SENTENCE WAS IMPOSED AND A REMAND FOR RESENTENCING IS REQUIRED.

---

[1] At the time of sentence, defendant was serving a three-year term of imprisonment for an unrelated offense committed in Cumberland County. Judge Jimenez ordered that the sentence he imposed in this case run concurrent to the sentence imposed in the Cumberland County matter.

We reject these arguments and affirm. We derive the following facts from the evidence presented at the evidentiary hearing conducted by Judge Jimenez to adjudicate defendant's motion to suppress.

At approximately 7:42 p.m. on March 15, 2015, State Police Trooper Alan Cook was on patrol in Trenton, driving a white Crown Victoria with the New Jersey State Police logo on the door panels, and overhead lights. As he drove through the area of Cass Street and Route 29, Cook noticed that the person seated on the passenger side of a silver Mazda Protégé was not wearing his seatbelt. As the Mazda turned left on Route 29, Cook activated his overhead lights, which simultaneously activated the video camera mounted on the side of the police vehicle. The driver of the Mazda heeded the implied command to stop and pulled the vehicle over to the side of the road.

Trooper Cook approached the Mazda's passenger side and informed the passenger, subsequently identified as defendant, that he had stopped the car because he noticed that defendant was not wearing his seatbelt. Defendant admitted he was not wearing his seatbelt. Cook asked the driver and defendant for their identification. As he stood by the opened passenger side window, Cook detected the odor "of burnt marijuana." Cook testified that in the course of taking possession of the identification documents,

he "lean[ed] into the car to confirm the original smell of . . . burnt marijuana."[2]

The driver did not have a driver's license. Cook testified the driver told him her "first name, middle initial, last name, [and] date of birth." Cook told her he needed to conduct a computer motor vehicle search to determine the status of her driving privileges, and testified that he was then going to "move along with . . . [the] consent to search procedure." Cook testified that, based on the odor of burnt marijuana, he believed he had probable cause to arrest defendant and the driver. However, he did not want to take any action until backup units arrived because, at this point in time, he was outnumbered two-to-one.

Cook decided "to follow through with . . . [the] consent to search protocol." The protocol required that "all occupants have to be detained, [and] secured as a first step." However, because backup units were not nearby, he decided not to remove defendant and the driver from their car. Cook nevertheless decided to charge both defendant and the driver with possession of marijuana based only on the "smell of burnt marijuana." According to Cook, defendant told him "they were at a party or something to that

---

[2] As a trained State Police Trooper with nine years' experience, Cook testified he was familiar with the smell of burnt marijuana.

effect, other people might have been, or he was around people that were smoking it or something to that effect."

As a prelude to his arrest, Cook apprised defendant of his Miranda[3] rights. After conducting a search of defendant's person incident to his arrest, Cook found ten glassine baggies[4] containing suspected crack cocaine. Cook returned to the Mazda and asked the driver to step out of the vehicle. He handcuffed her and placed her and defendant in the back of the State Police car.[5] He then presented the driver with a completed "consent to search" form allowing him to search the car without a warrant. The driver declined to sign the form.

Cook called the State Police barracks to request a truck to impound the car. When the driver overheard the radio transmission, she asked Cook what would happen to the car. According to Cook, he told her that the car would be towed to the State Police barracks in Hamilton Township. He told her she was going to come with him because he "would be pursuing other investigative means

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

[4] Cook described the glassine bags as "about an inch long, very small ziplock bag[s]."

[5] Cook also asked defendant and the driver whether either of them were in "CUMMA," an acronym for the "Compassionate Use Medical Marijuana Act," N.J.S.A. 24:6I-1 to -16. Defendant told Cook he did not know what CUMMA meant.

. . . ." Cook again told the driver he was impounding the car because he smelled burnt marijuana emanating from inside the vehicle.

According to Cook, both defendant and the driver said to him, "why can't you let us go, there's no weed in the car." Cook told them he could not just take their word for it. This colloquy between Cook and the driver continued until, according to Cook, she capitulated and said, "you can go ahead [and] search it . . . ." Cook testified that he asked her, "would you like me to reread the form to you, and then, I guess, you can make a decision at the end of the form." Cook testified that she simply relented and said: "Search the car, or go ahead and search[.]"

Despite her alleged capitulation, Cook testified that he reread the "consent to search" form to the driver again to make sure she understood her right to refuse. The signed "consent to search" form was admitted into evidence at the evidentiary hearing without objection by defense counsel. Cook testified that "underneath the passenger seat" of the Mazda he found "a chrome colored [loaded] revolver . . . ." The handgun had been tampered with. Cook explained, "on a normal revolver, there's a cylinder release pin that's located underneath the barrel. That was missing . . . ." The search of the car began at 8:07 p.m. and ended at 8:26 p.m. Defendant told Cook the handgun was his and "that the

6

driver had nothing to do with it."  Cook accepted defendant's statement and did not charge the driver as an accomplice or as joint possessor of the handgun.

Against this evidence, Judge Jimenez denied defendant's motion to suppress the handgun.  After stating the legal standards applicable here, the Judge made the following findings:

> Here we have in this case an officer who by his own uncontroverted testimony . . . which was provided in a clear, concise, straightforward manner, which as a result this [c]ourt finds to be credible, the officer testified that he noticed [defendant], the passenger of a vehicle, without a seat belt and proceeded to make a motor vehicle stop to that effect.
>
> The stop was recorded . . . [and] is in evidence, which was viewed by the [c]ourt, . . ., was the best evidence and the clearest representation of what happened subsequent to the stopping of the motor vehicle.
>
> . . . .
>
> Arguably, to [Cook's] surprise, . . . not anticipating that this would be the case, as he stood by the passenger side of the vehicle speaking to [defendant], addressing the fact that he was not wearing a seatbelt, Trooper Cook testified that he had smelled the burnt odor of marijuana emanating from inside the vehicle. And . . . that would in and of itself justify a warrantless search of the vehicle given the trooper was standing where he should have been standing.  No issue with regards to that.  The smell of marijuana was inadvertent in that the trooper could not offer or did not offer, and just from the facts, would not . . . be able to offer a basis for expecting

> that he would be smelling the marijuana from inside the vehicle, especially given that the entire incident was premised on a no seat belt violation.

Based on these findings, Judge Jimenez concluded Cook lawfully stopped the vehicle and, under the plain view doctrine, had probable cause to arrest defendant based solely on having smelled burnt marijuana emanating from inside the car. Judge Jimenez also found the driver of the car freely and knowingly consented to the search of the car. The Judge emphasized that the video/audio record shows the driver made an unsolicited statement to Cook authorizing him to search the car. The Judge concluded that the handgun Cook found under the passenger seat of the car was the product of a lawful, freely given consent to search.

We defer to Judge Jimenez's factual findings, which are supported by substantial credible evidence. See State v. S.S., 229 N.J. 360, 379-81 (2017). He had the opportunity to observe the witness first-hand, to assess his credibility, and to get a feel for the case, which is something beyond the reach of an appellate court. State v. Elders, 192 N.J. 224, 243-44 (2007); State v. Locurto, 157 N.J. 463, 471 (1999). We also agree with Judge Jimenez's well-reasoned conclusions of law. As this court has held, "the smell of burnt marijuana, by a trained and experienced State Trooper, emanating from the passenger

compartment of a legally stopped motor vehicle, created probable cause to believe that a violation of law had been or was being committed." State v. Judge, 275 N.J. Super. 194, 196-197 (App. Div. 1994); see also State v. Myers, 442 N.J. Super. 287, 290 (App. Div. 2015).

Defendant's argument attacking the sentence imposed by the court lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION