**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3705-17T2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

LEE CLAX, a/k/a
CHRISTOPHER CLAX,

      Defendant-Appellant.

_____

Submitted February 27, 2019 – Decided March 18, 2019

Before Judges Koblitz and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 17-08-1203.

Starkey, Kelly, Kenneally, Cunningham & Turnbach, attorneys for appellant (Clifford P. Yannone, on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Assistant Prosecutor, of counsel; Kenneth R. Paulus, Jr., Legal Assistant, on the brief).

PER CURIAM

Defendant Lee Clax appeals from an April 17, 2018 judgment of conviction, focusing on a December 20, 2017 order denying his motion to suppress evidence. We affirm.

Defendant was charged with third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1), and second-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5(b)(2). After defendant's motion to suppress the drug evidence was denied, defendant pled guilty to second-degree possession of cocaine with intent to distribute. In accordance with a negotiated plea, defendant was sentenced to serve nine years in prison subject to a fifty-one-month period of parole ineligibility.

The hearing on the suppression motion took place over four days. Testifying for the State was Captain Thomas Rizzo of the Howell Township Police Department. Defendant did not present any witnesses at the suppression hearing.

According to Captain Rizzo, he and his partner, Patrolman Travis Horton, were observing an area in the Township for suspected criminal activity. During their watch, the officers saw a green minivan tailgating another car. The officers were unable to see the driver of the minivan because the windows were tinted.

As they followed the minivan, the officers saw the vehicle drift almost a foot over the fog line, which is the line separating the traveled portion of the road from the shoulder of the road.

The officers then signaled the minivan to pull over. When the officers approached the stopped minivan, Captain Rizzo recognized an odor of raw marijuana coming from the passenger side of the car. When Rizzo started speaking to the driver, he smelled burnt marijuana. According to Rizzo, the smell seemed to "emanate to the ceiling of the vehicle" and from the cloth seats in the minivan. As Patrolman Horton approached the driver's side of the minivan, he noticed the odor of marijuana and saw a cigarette lighter in the driver's side door.

In response to the officers' questions, defendant, who was the driver of the minivan, denied smoking marijuana in the car. Defendant said he was the only person who drove the minivan and stated he never smoked inside the car.

Rizzo, who had significant experience and training in detecting the odor of marijuana, did not believe defendant's statements. Rizzo decided to search the minivan without a warrant for the source of the odor. Rizzo started his search on the passenger side of the minivan because that was the area where he first smelled marijuana. Underneath the front passenger seat, Rizzo found a "large

. . . clear cellophane package of a white powder." He suspected the powder was cocaine.

In his inspection of the minivan, Horton found an empty blunt cigar wrapper and a small amount of marijuana seeds and stems on the passenger side floor. The officers also found $2971 in cash hidden in a shoe located behind the front seats.

Defendant was arrested at the scene. Rizzo and Horton called for additional officers. One of the arriving officers had a K-9 dog. The K-9 dog performed a drug sniff and alerted to two locations inside the minivan: underneath the front passenger seat where the white powder was found and directly behind the front seats where the cash was found.

Only after defendant was transported to the police station did Rizzo learn defendant had a previous drug conviction. At the time of defendant's arrest, neither officer was aware that defendant had a prior conviction for drug dealing.

Because defendant was not the owner of the minivan,[1] defendant's name was not available through a license plate search. The officers discovered defendant's name from his driver's license. Captain Rizzo explained the license plate associated with the minivan had been run nine times between May 6, 2015

---

[1] The minivan was owned by defendant's sister.

A-3705-17T2

and June 9, 2017, the date of defendant's arrest. The minivan was stopped on May 6, 2015 for having illegal tinted windows. Defendant was not issued a summons on that occasion and was warned that tinted windows were a motor vehicle violation. According to Rizzo, a vehicle may not necessarily be stopped after every license plate check because the officer may receive an emergency call, it was unsafe to pull the vehicle over, or the officer lost sight of the vehicle.

In addition to the testimony of Captain Rizzo, the judge reviewed photographs of the minivan and a motor vehicle recording showing the search of the minivan. The judge denied defendant's motion to suppress the drug evidence. Finding Captain Rizzo's testimony to be credible, even in the face of vigorous cross-examination by defense counsel, the judge determined the police were justified in stopping defendant's van for one of several motor vehicle violations committed by defendant that evening.

During the course of the lawful motor vehicle stop, the judge found the officers had a reasonable suspicion of an unlawful activity unrelated to the traffic offenses. In this case, the officers detected the odor of marijuana. Based on the smell of marijuana, the judge concluded the officers were permitted to broaden their search for additional contraband.

The judge found it insignificant that Captain Rizzo first believed the smell was raw marijuana but then determined the smell was burnt marijuana as he moved closer to the interior of the minivan. According to the judge, the smell of raw marijuana created an inference there was marijuana or other contraband in the minivan and the smell of burnt marijuana created an inference that someone had smoked marijuana recently inside the vehicle. Under either scenario, the judge held there was a suggestion that marijuana or other contraband was inside the minivan. Based on Rizzo's testimony, the judge concluded the officers had a reasonable suspicion to search the minivan grounded on the odor of marijuana.

In reviewing the automobile exception to the officers' search of the minivan without a warrant, the judge determined the smell of marijuana gave the police probable cause to believe an offense had been committed and there might be evidence of contraband inside the minivan to permit the officers to search the vehicle without a warrant.

The judge rejected defendant's argument that prior license plate searches of the minivan evidenced racial profiling by the Howell Township Police Department. The judge explained defendant failed to meet his "heavy" burden of demonstrating racial profiling and offered "no facts or any colorable claim . . .

6

that the Howell Township Police Department has an officially sanctioned or de facto policy of selective enforcement against minorities."

On appeal, defendant raises the following argument:

> THE TRIAL COURT ERRED IN DENYING [DEFENDANT]'S MOTION TO SUPPRESS EVIDENCE BECAUSE THE AUTOMOBILE EXCEPTION TO THE WARRANT REQUIREMENT BASED ON THE PLAIN SMELL OF MARIJUANA WAS NOT SUPPORT[ED] BY SUFFICIENT EVIDENCE IN THE RECORD.

In reviewing a motion to suppress, we "must uphold a trial court's factual findings at a [motion to suppress] hearing when they are supported by sufficient credible evidence in the record." State v. Hathaway, 222 N.J. 453, 467 (2015) (citing State v. Elders, 192 N.J. 224, 244 (2007)). This is especially true when the findings of the trial court are "substantially influenced by [its] opportunity to hear and see the witnesses and to have the 'feel' of the case." Elders, 192 N.J. at 244 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). The trial court's legal conclusions are entitled to no special deference, and are reviewed de novo. State v. Gandhi, 201 N.J. 161, 176 (2010).

"A motor vehicular violation, no matter how minor, justifies a stop without any reasonable suspicion that the motorist has committed a crime or other unlawful act." State v. Bernokeits, 423 N.J. Super. 365, 370 (App. Div.

2011) (citing <u>Delaware v. Prouse</u>, 440 U.S. 648, 663 (1979)).  The State does not need to prove that the motor vehicle violation occurred, only that "the police lawfully stopped the car."  <u>State v. Heisler</u>, 422 N.J. Super. 399, 413 (App. Div. 2011) (quoting <u>State v. Williamson</u>, 138 N.J. 302, 304 (1994)).

The automobile exception "authorize[s] [a] warrantless search . . . when the police have probable cause to believe that the vehicle contains contraband or evidence of an offense and the circumstances giving rise to probable cause are unforeseeable and spontaneous."  <u>State v. Witt</u>, 223 N.J. 409, 447 (2015) (citing <u>State v. Alston</u>, 88 N.J. 211, 233 (1981)).  Probable cause "requires nothing more than a practical, common-sense decision whether, given all the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  <u>State v. Nishina</u>, 175 N.J. 502, 515 (2003) (quoting <u>State v. Johnson</u>, 171 N.J. 192, 214 (2002)).

"New Jersey courts have [long] recognized that the smell of marijuana itself constitutes probable cause 'that a criminal offense ha[s] been committed and that additional contraband might be present.'"  <u>State v. Walker</u>, 213 N.J. 281, 290 (2013) (quoting <u>Nishina</u>, 175 N.J. at 515-16).  The odor of marijuana gives rise to probable cause to conduct a warrantless search in the immediate

area from where the smell emanated. State v. Myers, 442 N.J. Super. 287, 297, n.5 (App. Div. 2015).

Once an officer smells burnt marijuana emanating from a vehicle, the officer has probable cause to arrest the driver, as well as to search the vehicle incident to arrest. State v. Judge, 275 N.J. Super. 194, 202-03 (App. Div. 1994). There is no requirement that suspected marijuana be found during the search. See State v. Vanderveer, 285 N.J. Super. 475, 479 (App. Div. 1995) (holding the difference in the drugs found – cocaine rather than marijuana – does not invalidate a search based on the odor of burnt marijuana, even where no marijuana was found).

In this case, the officers stopped defendant's minivan for assorted motor vehicle violations, including having tinted windows, N.J.S.A. 39:3-74, failing to maintain a lane, N.J.S.A. 39:4-88(b), and tailgating, N.J.S.A. 39:4-89. Defendant was the sole occupant of the vehicle when it was pulled over. As the officers approached the minivan, they detected the odor of marijuana. Based on the smell of marijuana, it was objectively reasonable for the officers to search defendant's minivan.

Having reviewed the testimony presented at the suppression hearing and according deference to the judge's credibility findings related to the denial of

defendant's suppression motion, we discern no basis to disturb the trial court's decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3705-17T2