**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3527-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DAVID N. VEGA,

     Defendant-Appellant.

_____

Submitted March 11, 2024 – Decided March 25, 2024

Before Judges Sabatino and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 20-10-0228.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Austin J. Howard, Assistant Deputy Public Defender, of counsel and on the briefs).

William A. Daniel, Union County Prosecutor, attorney for respondent (Milton Samuel Leibowitz, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

This appeal concerns a warrantless police search of a car, which revealed marijuana in the center console and a firearm in a backpack found in the trunk. Defendant David N. Vega was charged with possessory drug and firearm offenses and moved to suppress the evidence. After an evidentiary hearing, the trial court denied his motion. Defendant entered a plea agreement, preserving his right to appeal the denial of the suppression motion. Based on the holding in State v. Cohen, 254 N.J. 308, 321 (2023), decided after defendant was sentenced, we reverse the denial of defendant's suppression motion of the firearm, vacate his conviction and sentence, and remand for further proceedings consistent with this opinion.

I.

On January 23, 2020, Rahway police officers Detective Scott Maloney, Detective Anthony Tilton, and Detective Sergeant Michael Twerdak observed a car speeding, failing to use its turn signal, and failing to maintain its lane, so they initiated a traffic stop. The officers approached the car, and Detective Tilton asked defendant, the driver, for his identification and paperwork. Detective Maloney testified the smell of burnt marijuana was emanating from

the open driver's side window.[1]   Detective Maloney testified to the burnt marijuana smell continuing when defendant exited the vehicle, and the odor of raw marijuana lingering in the vehicle after defendant walked away.  Detective Tilton conducted field sobriety tests, which defendant failed.  Defendant told the officers his insurance information was on the passenger seat of his vehicle. Detective Maloney looked for it on and around the passenger seat as well as in the glove box.  Maloney located some insurance information, but it was expired.

Defendant was arrested for driving under the influence and transported to the police station by Detective Tilton.  Due to the smell of raw marijuana coming from the car's interior, Detective Maloney and Detective Sergeant Twerdak searched the vehicle.  In the center console, Detective Maloney found a plastic prescription bottle containing a plastic bag of raw marijuana.  He opened, then closed and then reopened the bottle and a small bag containing green vegetation was removed.  Detective Maloney smelled the bag and identified the odor as marijuana.  The bag was then placed in the prescription bottle and left on the front seat, where it remained for the remainder of the search.  Based on the smell

---

[1]  The facts giving rise to this case predate the Legislature's 2021 passage of the Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act ("CREAMMA"), N.J.S.A. 24:61-31 to -56, which specifically eliminated the odor or possession of marijuana in amounts for personal use as a basis for reasonable articulable suspicion of a crime.

of the marijuana in the car's interior compared to the small amount found in the console, Detective Maloney believed there was more marijuana in the vehicle, and the officers continued the search. While Detective Sergeant Twerdak continued to search the car's interior, Detective Maloney opened its trunk and observed a backpack, some luggage, other containers, and the same odor of raw marijuana. Detective Maloney opened the backpack to find a Glock nine-millimeter handgun with a loaded magazine and both a box and a plastic baggie containing additional nine-millimeter ammunition. Continuing to smell raw marijuana, he searched the other luggage and the remainder of the trunk, spare tire area, and under the hood, but found nothing else.

On cross-examination, Detective Maloney testified he believed the odor of marijuana was a valid exception to the requirement of a warrant to search the entire vehicle, including the trunk, "[u]p until the point where I wouldn't . . . smell any more marijuana or suspect any more criminal activity[.]" He also testified that at no time did either officer ask the defendant about marijuana, and at no time did the defendant tell either officer he had been smoking marijuana. He conceded he did not obtain the defendant's consent to search the car and he did not see any marijuana in plain view. He testified he left the bottle on the

driver's seat during the rest of the search, while continuing to smell marijuana in the car's interior.

After reviewing the officers' BWC footage, the court asked the parties to present additional testimonial evidence. At the second hearing, the State called Detective Sergeant Twerdak. He testified to his training on controlled dangerous substances ("CDS"), including the odors of raw and burnt marijuana, and his experience with CDS investigations. He then testified to the events leading up to the traffic stop. Detective Sergeant Twerdak testified to observing defendant moving slowly when exiting the vehicle and to observing Tilton's administration of field sobriety tests. He testified when he moved toward the driver's side of the vehicle and its open window, he "could smell an odor of alcohol[] as well as . . . [r]aw marijuana." At that point, he could not pinpoint the location of the smell.

Detective Sergeant Twerdak testified that after defendant was arrested, he and Maloney searched the vehicle because "[defendant] was placed under arrest for . . . driving while intoxicated[] as well as[] the smell of marijuana." He testified the smell remained after defendant had been removed, and it was coming "[f]rom the inside of the vehicle." He testified to observing Detective Maloney search the front driver-side area of the car and finding the prescription

5

bottle. He estimated the bottle contained "approximately an eighth of an ounce" of marijuana. As he and Detective Maloney continued to search the car's interior, he continued to smell raw marijuana, and even after the interior search was complete, he believed there was still more marijuana in the vehicle because he thought based on the smell there may be "more like an ounce of marijuana".

Detective Sergeant Twerdak testified that after Detective Maloney opened the trunk, he still smelled the odor of raw marijuana, and he observed Detective Maloney open the backpack to find the handgun and ammunition, which Detective Sergeant Twerdak secured in an evidence bag. Detective Sergeant Twerdak testified the smell of marijuana continued as Detective Maloney continued the search, and it was emanating from "[t]he interior of the vehicle . . . in the trunk and it was . . . throughout the vehicle." He testified the search continued because the smell of marijuana was still present. He testified to the preservation of footage from his BWC, and the State submitted it into evidence as S-2 and S-3. The BWC footage was then played for the court, with Detective Sergeant Twerdak narrating.

In a written opinion, the motion judge found the officers' testimony they smelled marijuana prior to finding the bottle in the center console credible, even though they did not openly discuss the smell at that time. This credibility was

6

bolstered by the officers' continued search after believing the continued odor could not be attributed to the small amount found in the bottle.

The court applied the automobile exception to the marijuana found in the center console. However, it declined to apply the automobile exception to the firearm found in the trunk because even though the court believed the officers had probable cause to continue the search for the source of the odor, the BWC footage showed the interior search had not been exhausted before Maloney opened the trunk. The court held the search of the trunk was therefore illegal. Nonetheless, the court admitted the evidence found in the trunk anyway under the doctrine of inevitable discovery, reasoning expansion of the search to include the trunk would have been inevitable after no additional marijuana was found during the remainder of the interior search.

On appeal, defendant argues the court should have granted his motion to suppress the evidence found in the car's trunk because the police lacked probable cause to search it.[2] He argues the automobile exception did not apply to the trunk because the police never had probable cause to search the trunk based on the odor emanating from the car's interior. He also argues the inevitable

_____

[2] Defendant does not challenge the admission of the evidence found in the car's center console.

discovery exception should not apply because the search of the trunk lacked probable cause, without regard to whether it was initiated during or after the completed interior search.

## II.

Appellate review of a trial court's factual findings on a motion to suppress is deferential "so long as those findings are supported by sufficient credible evidence in the record." State v. Goldsmith, 251 N.J. 384, 398 (2022) (internal quotations omitted). The findings will not be disturbed "unless they are so clearly mistaken that the interests of justice demand intervention and correction." State v. Cohen, 254 N.J. 308, 319 (2023) (internal quotations omitted). By contrast, the legal conclusions drawn from those facts are subject to de novo review. State v. Hubbard, 222 N.J. 249, 263 (2015). Therefore, whether the probable cause standard has been met is subject to de novo review. State v. Diaz, 470 N.J. Super. 495, 532 (App. Div. 2022) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).

## A.

Both the United States and New Jersey Constitutions protect citizens from unreasonable searches. U.S. Const. amend. IV; N.J. Const. art. 1, 7. Where police officers have not obtained a warrant prior to a search, the State must

demonstrate, by a preponderance of the evidence, "the search falls within one of the few well-delineated exceptions to the warrant requirement." Cohen, 254 N.J. at 319.

Under Federal law, the automobile exception permits the warrantless search of a car if it is "readily mobile," and the officer has "probable cause" to believe the vehicle contains contraband. State v. Witt, 223 N.J. 409, 422 (2015) (quoting Pennsylvania v. Labron, 518 U.S. 938, 940 (1996)). In New Jersey, the warrantless search of a car is permitted if the police "have probable cause to believe that the vehicle contains contraband or evidence of an offense and the circumstances giving rise to probable cause are unforeseeable and spontaneous." Witt, 223 N.J. at 448 (quoting State v. Alston, 88 N.J. 211, 233 (1981)). Probable cause "requires 'a practical, common[-]sense determination whether, given all of the circumstances, there is a fair probability that contraband or evidence of a crime will be found.'" State v. Myers, 442 N.J. Super. 287, 301 (App. Div. 2015) (quoting State v. Moore, 181 N.J. 40, 46 (2004)).

Even though the odor of marijuana alone could, prior to CREAMMA, constitute probable cause to search a car's interior, "a search which is reasonable at its inception may [nonetheless] violate the Fourth Amendment by virtue of its intolerable intensity and scope." Cohen, 253 N.J. at 320 (quoting Terry v. Ohio,

392 U.S. 1, 18 (1968)).  For example, in State v. Patino, our Supreme Court held the search of a car's trunk impermissibly exceeded its scope when the officer observed and recovered a small amount of marijuana in a car's interior, but then expanded his search to the trunk and discovered cocaine.  83 N.J. 1, 6 (1980). The Patino Court held officers must "provide justification to extend the . . . search further than the persons of the occupants or the interior of the car."  Id. at 14-15.

By contrast, in State v. Guerra, extension of a search to a car's trunk was found lawful after the odor of marijuana too strong to indicate an amount capable of being contained in the car's interior gave rise to probable cause to search the trunk. 93 N.J. 146, 150 (1983).  However, in that case, the officers also observed the car's trunk area was "hanging low," prompting the search of that specific area. Id. at 149.

The Supreme Court recently applied this scope of the search principle in Cohen, a pre-CREMMA case.  There the Court affirmed the requirement for additional facts beyond "simply detecting the smell of marijuana from the interior of the car" to create probable cause to extend a search to other areas of the vehicle.  254 N.J. at 324.  There, after stopping the defendant's car for a motor vehicle violation and approaching the car, officers detected the "general

smell" of then-illegal raw marijuana, although they could not pinpoint a specific area within the car as the source of that odor. Id. at 325. After they searched the passenger compartment and found no drugs, they searched the trunk and under the hood, discovering two guns under the hood. Id. at 315. The Court invalidated the search that went beyond the passenger compartment. Id. at 327. The Court posited had the officer in that case indicated a smell "of such magnitude as to necessarily emanate from a large cargo space such as a trunk, the question of probable cause would have been closer." Id. at 325. Nevertheless, it specifically stated, "a generalized smell of raw marijuana does not justify a search of every compartment of an automobile." Id. at 328.

Although we give deference to the findings of the court below that the officers detected the odor of raw marijuana in the interior of the car, we also note the officers opened the container of marijuana two times and removed the baggie one time, then left the bottle on the front seat. The marijuana remained inside the car as the search continued, providing an explanation for the odor's continued presence. Detective Sergeant Twerdak testified he believed the odor of the amount of marijuana in the prescription bottle found in the console did not, on its own, create the smell, he testified he expected to find "at least an ounce" of marijuana. However, nothing in the record reflects the generalized

11

odor was such that the officers expected an amount of marijuana so large that it could only have been contained in a large cargo area, such as the trunk, as was the case in <u>Guerra</u>, and as was hypothetically posited by the <u>Cohen</u> Court. Additionally, since no additional observations pointed to the trunk as a specific source of the odor, the police lacked probable cause to extend the search to that compartment. Therefore, the defendant's motion to suppress the weapon found in the trunk should have been granted.

B.

Defendant also argues the trial court's application of the inevitable discovery doctrine was an improper basis to admit the evidence found in the car's trunk. The inevitable discovery doctrine provides an exception to the general exclusionary rule that evidence obtained through an unlawful search may not be presented at trial. <u>State v. Sugar</u>, 100 N.J. 214, 236-238 (1985). To admit evidence under the exception, the State must prove, by clear and convincing evidence, that

> (1) proper, normal[,] and specific investigatory procedures would have been pursued in order to complete the investigation of the case; (2) under all of the surrounding relevant circumstances the pursuit of those procedures would have inevitably resulted in the discovery of the evidence; and (3) the discovery of the evidence through the use of such procedures would

12

have occurred wholly independently of the discovery of such evidence by unlawful means.

[Id. at 238.]

As discussed above, the facts of the case did not give rise to probable cause to search the trunk. As such, the State cannot meet its burden to show the trunk inevitably would have been searched using "proper, normal[,] and specific investigatory procedures" and it may not rely on the inevitable discovery exception to revive the admissibility of the suppressed evidence.

The court's order denying defendant's suppression motion is reversed, in part, regarding the recovery of the firearm, and defendant's conviction and sentence are vacated. The matter is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-3527-21