**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2354-18T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CORNELIUS C. COHEN,

    Defendant-Appellant.

_____

Submitted February 5, 2020 – Decided April 20, 2020

Before Judges Koblitz and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 16-10-0162.

Hunt Hamlin & Ridley, attorneys for appellant (Raymond Louis Hamlin, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Sarah C. Hunt, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Following the denial of his motion to suppress evidence seized from his vehicle without a warrant after a motor vehicle stop, defendant entered a conditional negotiated guilty plea, R. 3:9-3(f), to second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b).  He was sentenced in accordance with the plea agreement to five years' imprisonment, with the mandatory three-and-one-half-years of parole ineligibility.  See N.J.S.A. 2C:43-6(c).

Defendant now appeals from the December 24, 2018 judgment of conviction, raising the following points for our consideration:

> POINT ONE:
>
> THE MOTION COURT'S RULING FINDING THAT [STATE V. KAHLON[1]] PERMIT[]S THE SEARCH OF THE ENTIRE AUTOMOBILE UPON THE SMELL OF MARIJUANA WAS IN ERROR.
>
> POINT TWO:
>
> THE STATE FAILED TO ESTABLISH THAT THERE WERE EXIGENT CIRCUMSTANCES THAT WOULD SUPPORT THE WARR[A]NTLESS SEARCH OF DEFENDANT'S AUTOMOBILE.
>
>> A.  IN ASSESSING WHETHER THE STOP AND SEARCH WAS PREPLANNED, THE MOTION COURT ERR[]ED IN FINDING THAT THE VERIFICATION OF THE CONFIDENTIAL INFORMANT'S

---

[1]  172 N.J. Super. 331 (App. Div. 1980).

> INFORMATION PERMITTED THE STATE TROOPERS TO SEARCH THE AUTOMOBILE.
>
> B. THE MOTION COURT'S FINDING THAT TWO STATE TROOPERS INDEPEND[E]NTLY SMELLED RAW MARIJUANA IS NOT DETERMINATIVE AS TO WHETHER THE STOP AND SEARCH OF THE AUTOMOBILE WAS PREPLANNED.

We affirm.

At the hearing on the suppression motion, State Police Detective Joseph Czech and Trooper Charles Travis IV testified for the State. Trooper Caitlin Brennan and Najah[2] Baker testified for the defense. Czech, an eleven-year veteran assigned to the State Police Trafficking Unit, testified that in January of 2016, a confidential informant (CI) who had provided reliable information to other detectives in the past notified him that defendant was trafficking weapons between the Carolinas and New Jersey. The CI stated defendant used two different vehicles to transport the weapons "to the Essex . . . as well as Middlesex County area[s]," and provided a description of the vehicles, including the license plate numbers. Czech's investigation revealed that the vehicles, a gray Infiniti G35 and a black Honda Civic, were registered to defendant and Baker,

---

[2] Alternate spellings of Najah appear in the record.

respectively. The investigation also confirmed that the Honda Civic had traveled through the southern states in November 2015.

On January 15, 2016, the CI notified Czech that defendant was "en route to one of the Carolinas" and "would be returning" to New Jersey on Sunday, "January 17th." As a result, Czech entered "[t]he license plates of both vehicles" into "various [law enforcement] databases" so that he would be notified by "[t]he Regional Operations Intelligence Center [ROIC]" if either license plate "was r[u]n by another officer or . . . picked up by an automated reader." In addition, Czech's supervisor "sent out an e-mail to State Police stations" to "be on the lookout [BOLO] for the[] vehicles" being operated by defendant or Baker. However, the e-mail only directed recipients to "notify [Czech] or other unit members if they . . . came across the vehicle[s]." Subsequently, Czech was notified by the ROIC and Travis that the Honda Civic was located and responded to the location.

Travis, a nine-year veteran trooper, testified that he was aware of the BOLO from the e-mail being "forwarded to . . . [his] work e-mail" and "disseminated at rol[l] call." According to Travis, during his shift on January 17, he observed the Honda Civic identified in the BOLO "swerve[] over the lines" "several times" as it "entered the turnpike northbound," leading him to

suspect that the driver was operating the vehicle under the influence of alcohol. In addition, "[a]s the vehicle was going through the toll plaza" for "the Woodbridge area, . . . the E-ZPass reader indicated unpaid tolls." Travis continued to "follow[] the vehicle" onto "parkway north" and, based on the violations, conducted a motor vehicle stop "around [milepost] 137." Brennan assisted with the stop as "a back-up trooper."

Defendant was identified as the driver of the vehicle, and Baker was identified as the front seat passenger. Upon approaching the vehicle, Travis detected "[a] strong odor of raw marijuana" emanating from the vehicle and observed "multiple air fresheners hanging from the rearview mirror," indicating an attempt "to mask the [marijuana] odor." Additionally, while requesting defendant's driving credentials, Travis "observed greenish-brown vegetation on [defendant's] beard and . . . shirt," believed to be marijuana residue. After defendant and Baker confirmed that neither was a medical marijuana user, Travis ordered them out of the vehicle, placed them under arrest, and conducted a search of the vehicle to ascertain the source of the marijuana odor while other officers responded to the scene, one of whom also detected the odor of marijuana emanating from the vehicle.

A-2354-18T2

During the search, Travis found a spent 9mm shell casing in a shot glass inside the glove compartment of the vehicle's interior. After completing the search of the passenger compartment with negative results for marijuana, Travis proceeded to search "the engine compartment" because "[m]arijuana can fit in the engine compartment" and "will get sucked into the air . . . vents." There, Travis found "[a] black canvas bag" containing a "shotgun" along "the firewall of the engine . . . where it meets the partition for the passenger compartment." Inside "a smaller bag" on "the driver's side in the same location up against . . . the firewall," he found "a revolver." Proceeding to the trunk, Travis found a "duffle bag" inside the trunk containing "various calibers of ammunition," including hollow point bullets.

The entire encounter was recorded on the dash-cam video recording in Travis's patrol car, which "start[ed] recording" once Travis activated his overhead emergency lights to conduct the stop. The dash-cam video was played during the hearing and viewed by the judge. After the search, Travis transported defendant back to the State Police barracks and issued him "[m]otor vehicle violation[] summonses" for "failure to pay tolls" and "failure to maintain . . . lane of travel." Based on the seizure of the two firearms and the hollow point bullets, defendant was subsequently indicted for two counts of second-degree

6

unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) and N.J.S.A. 2C:39-5(c)(1); and fourth-degree possession of a prohibited device, N.J.S.A. 2C:39-3(f).

For the defense, Trooper Brennan testified at the hearing that she "had been speaking with Travis" on the Turnpike during her shift on January 17, when "he abruptly took off." She followed him and served as a back-up during the motor vehicle stop, but did not know the reason for the stop and had no recollection of receiving the BOLO. In turn, Baker testified that when they were stopped on January 17, neither she nor defendant had consumed marijuana or had marijuana in their possession. She also provided her E-ZPass records for the period in question, which were moved into evidence.

Following the hearing, the judge denied defendant's motion. In a written decision, the judge credited Travis's testimony, which was corroborated by the dash-cam video, applied the governing principles, and concluded that the search was legally justified. First, citing State v. Smith, 306 N.J. Super. 370, 380 (App. Div. 1997), the judge determined that "based on his training and experience," Travis's observation of defendant's "failure to maintain his lane of traffic" "indicated possible intoxication" and "provided him with an 'articulable and

reasonable suspicion that the driver committed a motor vehicle offense.'" The judge added

> Travis also testified he observed . . . [d]efendant drive through the EZ Pass lane without paying the toll. Specifically, when . . . [d]efendant drove through the EZ Pass lane, the toll sign indicated "No Toll Paid." To contradict this observation, . . . [d]efendant provided the [c]ourt with . . . Baker's EZ Pass records and argued the toll was paid. Based on the [c]ourt's review and interpretation of the records, it appears . . . Baker's EZ Pass account had a negative balance on January 17, 2016. The records also indicate the toll charged on January 17, 2016 was not actually recorded as paid until January 21, 2016, two days after a prepaid payment of $50.00 posted to the account. . . .
>
> Thus . . . [d]efendant's efforts to impeach the credibility of Trooper Travis with the EZ-Pass records is misplaced . . . .

The judge also dismissed defendant's attempt to discredit Travis's testimony with Brennan's. In that regard, the judge found

> Brennan's testimony ancillary to the core issues of this case. According to . . . Brennan, she and . . . Travis were parked next to each other on the Turnpike when . . . Travis quickly drove off. At this time, . . . Brennan was unaware as to why . . . Travis unexpectedly drove off. . . . Brennan decided to follow . . . Travis as back up. However, . . . Brennan had no reason to focus her attention on the vehicle pursued by . . . Travis because she was unaware of who . . . Travis was pursuing, or why. In addition to . . . Brennan's lack of knowledge, she was physically unable to observe . . . [d]efendant's vehicle as she traveled behind . . . Travis. As a result,

8

. . . Brennan was unable to provide testimony regarding the validity of the motor vehicle stop.

The judge posited that "the core issue of th[e] motion [was] whether the smell of raw marijuana was actually detected." Despite the fact that "no marijuana was found in the vehicle," the judge found "Travis's testimony that he smelled raw marijuana" credible, explaining

> After removing . . . [d]efendant and . . . Baker from the vehicle, . . . Travis begins the search of the vehicle. At this time, an unidentified detective walks up to . . . Travis. . . . Travis introduces himself and explains to the detective he is searching the vehicle after detecting raw marijuana. At 22:18 of the [dash-cam video], the unidentified detective confirms the smell of raw marijuana by saying, "yeah, you can really smell it." Then, at 22:36 of the [dash-cam video], . . . Travis is unsuccessful in his search for marijuana and states quietly he doesn't know why there isn't marijuana, and maybe . . . [d]efendant had the marijuana in the car earlier. . . .

> Although no marijuana was subsequently found in the vehicle . . . , this [c]ourt finds Trooper Travis'[s] credibility coupled with the corroboration of the unidentified detective enough to support probable cause of the search by a preponderance of the evidence. First, as evidenced by the [dash-cam video], . . . Travis and the unidentified detective were meeting for the first time before conducting the search. The unidentified detective's corroboration of the raw marijuana smell was unsolicited by . . . Travis, and there is no evidence to suggest the two preplanned the conversation to support the search as a result of the notice.

9

In specifically addressing the impact of the notification contained in the BOLO, the judge reasoned

> Although . . . Travis was made aware of . . . [d]efendant and alleged weapon trafficking prior to making the motor vehicle stop, this [c]ourt finds the stop and subsequent warrantless search were independent of the notification. . . . Travis'[s] motive for following . . . [d]efendant is inconsequential as the analysis of the stop is based solely on the objective facts involving the motor vehicle violations observed.  Here, . . . Travis observed . . . [d]efendant committing motor vehicle violations.  When the smell of raw marijuana was detected, a warrantless search became permissible to locate the marijuana.  [Kahlon, 172 N.J. Super. at 338].

The judge concluded

> Travis had an articulable and reasonable suspicion [that] . . . [d]efendant committed motor vehicle violations. Once . . . [d]efendant's vehicle was lawfully stopped, . . . Travis's detection of the odor of raw marijuana emanating from the vehicle was unforeseeable and spontaneous, permitting a warrantless search of the entire vehicle.

Our review of the trial court's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009).  "An appellate court reviewing a motion to suppress evidence in a criminal case must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'"  State v. Boone, 232 N.J. 417, 425-26 (2017) (quoting State v. Scriven, 226 N.J. 20, 40 (2016)).  We do so

10

"because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Gamble, 218 N.J. 412, 424-25 (2014) (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). This deferential standard of review applies even if the trial court's factual findings are "based on both a video recording and eyewitness testimony." State v. S.S., 229 N.J. 360, 374 (2017) (citing State v. Elders, 192 N.J. 224, 248 (2007)).

"The governing principle, then, is that '[a] trial court's findings should be disturbed only if they are so clearly mistaken that the interests of justice demand intervention and correction.'" Robinson, 200 N.J. at 15 (alteration in original) (quoting Elders, 192 N.J. at 244). "[A] trial court's factual findings should not be overturned merely because an appellate court disagrees with the inferences drawn and the evidence accepted by the trial court or because it would have reached a different conclusion." S.S., 229 N.J. at 374. "We owe no deference, however, to conclusions of law made by trial courts in deciding suppression motions, which we instead review de novo." State v. Brown, 456 N.J. Super. 352, 358-59 (App. Div. 2018) (citing State v. Watts, 223 N.J. 503, 516 (2015)).

Applying that de novo standard of review to the trial court's legal conclusions, "[w]e review this appeal in accordance with familiar principles of

constitutional law." State v. Robinson, 228 N.J. 529, 543 (2017). "Both the United States Constitution and the New Jersey Constitution guarantee an individual's right to be secure against unreasonable searches or seizures." State v. Minitee, 210 N.J. 307, 318 (2012) (citing U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7). Thus, searches and seizures conducted without a warrant "are presumptively invalid as contrary to the United States and the New Jersey Constitutions." State v. Pineiro, 181 N.J. 13, 19 (2004) (citing State v. Patino, 83 N.J. 1, 7 (1980)). As such, "the State must demonstrate by a preponderance of the evidence," id. at 20 (quoting State v. Wilson, 178 N.J. 7, 13 (2003)), that "[the search] falls within one of the few well-delineated exceptions to the warrant requirement." Id. at 19-20 (quoting State v. Maryland, 167 N.J. 471, 482 (2001) (alteration in original)). "Thus, we evaluate the evidence presented at the suppression hearing in light of the trial court's findings of fact to determine whether the State met its burden." Id. at 20.

The exception invoked in this case to justify the warrantless search is the automobile exception to the warrant requirement. Pursuant to State v. Witt, 223 N.J. 409 (2015), officers may conduct a warrantless, nonconsensual search during a lawful roadside stop "in situations where: (1) the police have probable cause to believe the vehicle contains evidence of a criminal offense; and (2) the

circumstances giving rise to probable cause are unforeseeable and spontaneous." State v. Rodriguez, 459 N.J. Super. 13, 22 (App. Div. 2019) (citing Witt, 223 N.J. at 447-48). See also State v. Alston, 88 N.J. 211, 230-31 (1981).

"New Jersey courts have [long] recognized that the smell of marijuana itself constitutes probable cause that a criminal offense ha[s] been committed and that additional contraband might be present." State v. Walker, 213 N.J. 281, 290 (2013) (quoting State v. Nishina, 175 N.J. 502, 515-16 (2003)) (internal quotation marks omitted); accord, e.g., State v. Pena-Flores, 198 N.J. 6, 30 (2009); State v. Birkenmeier, 185 N.J. 552, 563 (2006); State v. Guerra, 93 N.J. 146, 150-51 (1983); State v. Legette, 441 N.J. Super. 1, 15 (App. Div. 2015); State v. Myers, 442 N.J. Super. 287, 295-96 (App. Div. 2015);[3] State v. Chapman, 332 N.J. Super. 452, 471 (App. Div. 2000); State v. Vanderveer, 285 N.J. Super. 475, 479 (App. Div. 1995); State v. Judge, 275 N.J. Super. 194, 201 (App. Div. 1994); State v. Sarto, 195 N.J. Super. 565, 574 (App. Div. 1984); Kahlon, 172 N.J. Super. at 338.

---

[3] "[A]bsent evidence the person suspected of possessing or using marijuana has a [medical use marijuana] registry identification card, detection of marijuana by the sense of smell, or by the other senses, provides probable cause to believe that the crime of unlawful possession of marijuana has been committed." Myers, 442 N.J. Super. at 303.

These and other decisions have "'repeatedly recognized that' . . . the detection of that smell satisfies the probable-cause requirement." Walker, 213 N.J. at 287-88 & n.1. Thus, in the context of a warrantless automobile search, the "smell of marijuana emanating from the automobile [gives] the officer probable cause to believe that it contain[s] contraband." Pena-Flores, 198 N.J. at 30 (citation omitted). However, "[a] police officer must not only have probable cause to believe that the vehicle is carrying contraband but the search must be reasonable in scope." Patino, 83 N.J. at 10. In that regard, "[i]t is widely recognized that a search, although validly initiated, may become unreasonable because of its intolerable intensity and scope." Id. at 10-11 (citing Terry v. Ohio, 392 U.S. 1, 19 (1968)). Thus, "the scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." Terry, 392 U.S. at 19 (quoting Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 310 (1967) (Fortas, J., concurring)).

Applying those principles here, we conclude that the judge's factual findings are amply supported by the record and his legal conclusions are sound. As "a trained and experienced State Trooper," Travis's detection of the odor of raw marijuana "emanating from the passenger compartment of a legally stopped motor vehicle, created probable cause to believe that a violation of law had been

or was being committed" and justified the ensuing search. Myers, 442 N.J. Super. at 297. Indeed, the detection of the odor of raw marijuana after stopping the vehicle, in conjunction with Travis's observation of marijuana residue on defendant's beard and shirt, as well as several air fresheners hanging from the rearview mirror, were objectively unforeseeable and unanticipated circumstances that gave rise to probable cause to justify a warrantless search.

Defendant argues that the judge's ruling that the "[t]roopers' search of the entire automobile based on the smell of raw marijuana" was justified did "not comport with the holding in Kahlon or our case law concerning automobile searches and the smell of marijuana." Accordingly, defendant "contends that the search of the trunk and hood was unreasonable and all evidence obtained from said search should be suppressed." We disagree.

In Kahlon, after conducting a motor vehicle stop and detecting the odor of "burning marijuana" when the "defendant opened his window to exhibit his [driving] credentials," the defendant ultimately admitted to the officer he had been "smoking marijuana." 172 N.J. Super. at 336. A subsequent search of the interior of the vehicle uncovered "a half-burned marijuana cigarette," "a clear plastic bag filled with . . . approximately [one-half] ounce of marijuana and a package of cigarette wrapping papers." Ibid. When the officer continued to

search the back seat where a passenger had been seated, "he noticed the very heavy odor of unburned marijuana," but found "no potential marijuana containers." Id. at 337. We held that the officer's "inability to pinpoint the source" of the odor emanating "from the rear of the [defendant's] vehicle, together with the marijuana already found in the car," established probable cause to extend the search to the trunk of the car, where he discovered approximately thirty pounds of marijuana in a torn plastic bag located inside a partially opened cardboard box. Id. at 338.

Likewise, in Guerra, after pulling a car over on the Turnpike for an inoperable taillight, a trooper "detected a strong odor of raw unburned marijuana emanating from the interior of the car." 93 N.J. at 149. Upon concluding that a small overnight suitcase in the car's interior "could not have been the source of the odor," a subsequent search of the trunk uncovered plastic bags containing marijuana. Id. at 149-50. Citing Kahlon with approval, our Supreme Court upheld the trial court's denial of the defendant's suppression motion, holding that under the automobile exception to the warrant requirement, the trooper "had probable cause to search the trunk for evidence of contraband" once he determined that "the small suitcase in the car's interior" could not have been the source of the "strong odor of marijuana." Id. at 150.

Here, we are satisfied that Travis's detection of a strong odor of raw marijuana in the car's interior and inability to locate the source after searching the interior justified extending the search to the trunk and the engine compartment where, as Travis explained, the odor of marijuana could travel through the air vents into the vehicle's interior. "The scope of a warrantless search of an automobile is defined by the object of the search and the places where there is probable cause to believe that it may be found." State v. Esteves, 93 N.J. 498, 508 (1983) (citing Guerra, 93 N.J. at 151). The fact that the search uncovered firearms and ammunition, instead of marijuana, does not invalidate the search. See Vanderveer, 285 N.J. Super. at 479 ("The fact that cocaine turned up instead of marijuana does not invalidate the [warrantless] search.").

Defendant also argues that "the fact that two State Troopers independently smelled raw marijuana is of no significance in refuting . . . [d]efendant['s] contention that [the] stop and search of the automobile was preplanned" and "thus unreasonable." According to defendant, "the facts of this case" "highlight[] that the true intent of the troopers was to search the entire automobile for . . . weapons" as a result of the CI's tip. However, the existence of a parallel investigation into defendant's suspected firearms trafficking is irrelevant. "[T]he proper inquiry for determining the constitutionality of a

search and seizure is whether the conduct of the law enforcement officer who undertook the search was objectively reasonable, without regard to his or her underlying motives or intent." State v. Kennedy, 247 N.J. Super. 21, 27 (App. Div. 1991). "The fact that the officer does not have the state of mind hypothesized by the reasons which provide the legal justification for the search and seizure does not invalidate the action taken, so long as the circumstances, viewed objectively, support the police conduct." Id. at 28 (citing State v. Bruzzese, 94 N.J. 210, 220 (1984)). Accord State v. Bacome, 228 N.J. 94, 103 (2017).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2354-18T2