**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3476-20

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

RASHON HAYES,

    Defendant-Respondent.

_____

Submitted January 5, 2022 – Decided March 15, 2022

Before Judges Sabatino and Rothstadt.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 21-01-0010.

Michael H. Robertson, Somerset County Prosecutor, attorney for appellant (Yoana Yakova, Assistant Prosecutor, of counsel and on the brief).

Joseph E. Krakora, Public Defender, attorney for respondent (Zachary Markarian, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

We granted the State leave to appeal from the trial court's May 19, 2021 order granting defendant Rashon Hayes's motion to suppress evidence. On appeal, the State argues that contrary to the trial court's determination, police had probable cause to arrest defendant based on an officer detecting the odor of raw marijuana during a roadside interaction, thereby permitting the seizure and search of a bag defendant had outside of his car as part of a search incident to his arrest. It also argues that the search and seizure were permitted under the automobile exception to the warrant requirement. We disagree and affirm substantially for the reasons stated by Judge Peter J. Tober in his comprehensive, eighteen-page written decision issued with the order under appeal.

The facts developed at the two-day suppression hearing, where the arresting officer, State Trooper Russell Cahn, was the only witness, are summarized as follows. On October 15, 2020, Cahn responded to a single car accident on the westbound side of I-78. His conversations and actions during his interactions with the individuals were captured on his body worn camera (BWC).

When he arrived on the scene, Cahn observed three sheriff's officers and two individuals; one individual, later identified as defendant, was at the rear of the vehicle, rummaging through items in the open hatchback, and the other,

defendant's passenger, was seated on the guardrail approximately fifteen to twenty feet away from the vehicle with a black bag on the ground next to him.

Upon his arrival, Cahn spoke to the passenger who identified defendant as the driver. He then asked defendant for his credentials and defendant said he did not have his license. Cahn then asked defendant to sit next to the passenger on the guardrail. Defendant complied and picked up the black bag that was sitting next to the passenger and placed it in front of him. While defendant was sitting on the guardrail, Cahn reengaged in conversation with defendant and the passenger to ascertain "what happened," requested that they write their name and date of birth on a piece of paper, and asked if they needed medical assistance.

After listening to defendant and the passenger for a few minutes regarding the accident, Cahn told the sheriff's officers, "You guys are good if you want to go." However, Sheriff's Officer Russo pulled Cahn to the side and informed him of the "smell [of] marijuana,"[1] to which Cahn responded, "Yeah Yeah Yeah,"

---

[1] The transcript did not capture these words. Instead, the words "smell marijuana" were discerned by the trial judge's "careful review of the . . . [BWC] footage." Our review of the footage, though unnecessary, confirms the trial judge's findings.

A-3476-20

and then asked the sheriff's officers to stay on the scene. [2] According to Cahn, he and Russo smelled raw marijuana emanating from the vehicle and he believed that defendant was involved in criminal activity.

Immediately after Cahn's conversation with Russo, he went back to his patrol unit and requested "one or two more units." When asked by dispatch, "[W]hat you got?," Cahn responded, "Standby." He then got out of the patrol car, walked to the back of defendant's vehicle, briefly stood there, and returned to his patrol car and said, "We got odor." When asked, during direct examination, what he was doing when he went back and forth between his patrol car and defendant's vehicle, Cahn testified, "Smelling the odor of raw marijuana going back up to the vehicle to just confirm that I did, in fact, have the odor of raw marijuana."

Thereafter, Cahn returned to defendant and his passenger and asked if either one of them are "medical marijuana patients." They responded, "No," and Cahn immediately arrested defendant, read him his Miranda[3] rights, and secured

---

[2] The BWC footage does not pick up the entire conversation between Cahn and Russo.

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

A-3476-20

him in the back of his patrol car.[4]  Cahn also arrested the passenger and secured him in the back of another patrol car.  Cahn testified that he arrested them because of the "odor of raw marijuana," which he believed was in either the vehicle or on their person.

No marijuana or other contraband was found in the car or on defendant's or the passenger's person.  However, Cahn found marijuana and three pills in defendant's black bag.  The marijuana was contained inside a closed, separate plastic bag located in the black bag.

After considering Cahn's testimony, the BWC footage and other evidence, as well as the parties' arguments, Judge Tober granted defendant's motion to suppress.  The trial judge found that "[d]efendant was arrested, handcuffed, searched, given <u>Miranda</u> warnings, and place[d] in the back of [the] police vehicle without probable cause to effect the arrest."  The judge acknowledged that "New Jersey courts [have] recognized that 'the smell of marijuana itself constitutes probable cause that a criminal offense ha[s] been committed and that additional contraband might be present,'" but after a review of the "relevant case law provided by both parties," he concluded that "[i]t is not clear that the odor

---

[4]  After his arrest, a grand jury indicted defendant, charging him with third-degree CDS possession, N.J.S.A. 2C:35-10(a)(1).

A-3476-20

of raw marijuana, alone, provides a sufficient basis for probable cause to <u>arrest</u> a person."

The trial judge found it "improper" for Cahn to have "jumped over reasonable suspicion (which would have allowed for a custodial detention) having articulated no more than a smell of raw marijuana emanating from [the vehicle] that was unoccupied at the time." He noted that if Cahn "believed that he had noticed a smell of raw marijuana emanating from the [vehicle], then [he] could have lawfully conducted a probable cause search of the [vehicle]." At that point, the judge observed, "[i]f contraband had been found in the [vehicle], then [Cahn] would have had probable cause to make an arrest," and "[o]nly then would it be possible to search . . . [d]efendant incident to that arrest."

The judge found that, despite Cahn's testimony, "it is unclear at what point . . . Cahn actually smelled the raw marijuana emanating from the vehicle." Moreover, he found that "it appear[ed] that [Cahn] was initially going to treat the single vehicle accident as just an accident and told the sheriff['s] officers they could leave . . . . possibly indicat[ing] that he did not believe criminal activity had occurred." "However, after a brief conversation initiated by Sheriff Russo, [he] change[d] his mind and requested that the sheriff['s] officers remain on[ the ]scene." Accordingly, the judge "surmise[d] that, prior to talking

6

with . . . Russo, . . . Cahn had not independently smelled an odor of raw marijuana."

Judge Tober also found that it was implausible that the marijuana found in the black bag left any aroma of marijuana in the car. He noted again that no contraband or marijuana was found in the vehicle. Instead, it was found in the black bag that was sitting fifteen to twenty feet away from the vehicle. He observed that the black bag was picked up by a sheriff's officer and placed on Cahn's patrol car but "at no time during the interaction [with the black bag] did any . . . officer or . . . Cahn indicate that the source of the odor was emanating from the black bag." According to the judge, "[i]t is simply not tenable that a black bag containing a small amount of raw marijuana which was contained in another plastic bag, left such an odor of raw marijuana in [a vehicle], which had been on the highway for some appreciable amount of time with its doors and rear hatchback open."

Moreover, the judge rejected the State's request to find that defendant was subjected to a custodial detention, rather than an arrest because defendant "was clearly and unequivocally arrested." Indeed, he noted that because Cahn testified that he arrested defendant and conducted a search incident to arrest, and the BWC footage showed that Cahn placed defendant in handcuffs, searched his

7

pockets, and placed him in his patrol car while reading his <u>Miranda</u> warnings, that "[t]his was an arrest by any measurable standard," "before the recovery of contraband," and "before the search of the [vehicle]."

Based on his finding that Cahn's testimony about smelling raw marijuana was not credible, the judge entered an order granting defendant's motion. This appeal followed.

On appeal, our review of a trial court's decision on a motion to suppress is limited. <u>State v. Gamble</u>, 218 N.J. 412, 424-25 (2014). We defer to the trial court's factual findings unless they are "clearly mistaken" or "so wide of the mark" that the interests of justice require appellate intervention. <u>State v. Elders</u>, 192 N.J. 224, 245 (2007). Because the trial judge observes the character and demeanor of the witnesses at a suppression evidentiary hearing, he is better positioned to determine credibility. <u>State v. Locurto</u>, 157 N.J. 463, 474 (1999). "Video-recorded evidence is reviewed under the same standard." <u>State v. Hagans</u>, 233 N.J. 30, 38 (2018). A "trial court's reliance, in part, on . . . video [evidence does] not extinguish the deference the Appellate Division owe[s] to [its] factual findings." <u>State v. S.S.</u>, 229 N.J. 360, 374 (2017) (citing <u>Elders</u>, 192 at 244-45.) "A trial court's interpretation of the law, however, and the consequences that flow from established facts are not entitled to special

deference." State v. Hubbard, 222 N.J. 249, 263 (2015) (citations omitted).  As such, "[a] trial court's legal conclusions are reviewed de novo."  Ibid.

The starting point in deciding a suppression motion is generally our federal and state constitutions.  The Fourth Amendment of the U.S. Constitution and Article I, Paragraph 7 of the New Jersey Constitution provide that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated," and that no warrant shall issue except on probable cause.  U.S. Const. amend. IV; N.J. Const. art. 1 par. 7.  "The standards for determining probable cause to arrest and probable cause to search are identical."  State v. Moore, 181 N.J. 40, 45 (2004).  "Probable cause to arrest exists where the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed."  Id. at 46 (alterations in original) (quoting Schneider v. Simonini, 163 N.J. 336, 361 (2000)).

Police officers are precluded from undertaking a warrantless search or seizure unless the search or seizure falls within one of the few exceptions to the warrant requirement.  State v. Rodriguez, 172 N.J. 117, 125 (2002).  These

exceptions include a search that is incident to a lawful arrest, State v. Minitee, 210 N.J. 307, 318 (2012), or the automobile exception, where a warrantless search of a vehicle is permitted where unforeseeable and spontaneous circumstances give rise to probable cause, and there is some degree of exigency, State v. Witt, 223 N.J. 409, 423-25, 427, 450 (2015). The validity of a search incident to an arrest depends on a lawful arrest based on probable cause. State v. Dangerfield, 171 N.J. 446, 456 (2002). Any "[e]vidence obtained as the fruit of an unlawful search or seizure must be suppressed." State v. Smith, 155 N.J. 83, 100 (1998).

With these constitutional parameters in mind, we turn to the State's argument that Judge Tober ignored case law supporting the validity of an arrest based on odor of marijuana, which would justify a search incident to the arrest. The State contends, the judge "ma[de] assumptions, unsupported by the record, about the circumstances at the scene and dr[ew] factual conclusions to justify suppression of the evidence." Although the State also complains that "the [judge] ma[de] no credibility findings about . . . Cahn's testimony," it later concedes that the judge, "question[ed] whether . . . Cahn smelled marijuana" at the time of defendant's arrest and "whether such a small amount of marijuana could emanate a strong enough odor that would linger in the vehicle." The State

concludes that the judge's "application of the law is improper," and therefore, his order should be reversed.

In support, the State relies on State v. Myers, 442 N.J. Super. 287, 297 (App. Div. 2015), for the proposition that "the smell of marijuana itself can suffice to furnish probable cause that a criminal offense has been committed [and gives an officer] the right to arrest defendant for committing an apparent marijuana offense in his presence." It argues that "Myers fully supports an arrest for the odor of marijuana," which was detected at the scene by Cahn and other officers. It insists that a trial judge "cannot in hindsight place itself at the scene and make unsubstantiated conclusions about the smell." The State contends, the trial judge's "focus [should be] on the facts and circumstances leading up to the arrest and search and whether those facts give rise to a well-grounded suspicion that an offense had been committed." It argues that Cahn testified that "he detected the odor of marijuana prior to arresting defendant," and that these facts are "sufficient to support a well-grounded suspicion that an offense was committed. Thus, probable cause existed for the arrest." We disagree.

Up until the recent change in our law regarding the possession and use of cannabis,[5] the well-established principles adopted by our courts in State v. Nishina, 175 N.J. 502 (2003), State v. Walker, 213 N.J. 281, 290 (2013), and State v. Kahlon, 172 N.J. Super. 331 (App. Div. 1980) recognized the validity of a warrantless search based on a police officer's smell of marijuana prior to an arrest. Those cases authorize the "warrantless search of the persons in the immediate area where the smell [had] emanated." Nishina, 175 N.J. at 516 (alteration in original). Moreover, in Myers, the Court recognized that the "smell of marijuana" gives an officer "the right to arrest . . . for committing an apparent marijuana offense in [an officer's] presence." 442 N.J. Super. at 297. Though the facts underpinning these cases concern the smelling of burnt marijuana, the legal conclusions do not make a distinction between raw or burnt marijuana. Nonetheless, they all rely on the trial judge's finding that the officer's testimony was credible. See, e.g., Nishina, 175 N.J. at 517 (accepting the trial court's "chronology" that the officer did not "immediately smell marijuana"

---

[5] We note that the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act, N.J.S.A. 24:6I-31 to -56 (the Act), became effective on February 22, 2021. Under the Act, an odor of marijuana cannot create a reasonable suspicion or probable cause to conduct a warrantless search. N.J.S.A. 2C:35-10c. Because that limitation is prospective, it is not applicable in this appeal.

because he was a couple of feet away from defendant but thereafter "smelled the drug as the encounter continued").

In the present case, Judge Tober did not credit the officer's testimony that he smelled "raw marijuana" before defendant's warrantless arrest. Contrary to the State's argument, the judge's chronology of events, assessment of Cahn's testimony, and review of BWC footage was within the orbit of his authority, and his explanations for rejecting Cahn's testimony were firmly based on established principles of law. State v. Scriven, 226 N.J. 20, 32-33 (2016) ("[W]e must respect factual findings that are 'supported by sufficient credible evidence' at the suppression hearing, even if we would have made contrary findings had we sat as the motion court.").

"In determining whether there was probable cause to make an arrest, a court must look to the totality of the circumstances and view those circumstances 'from the standpoint of an objectively reasonable police officer.'" State v. Basil, 202 N.J. 570, 585 (2010) (citations omitted) (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)). When considering the complete sequence of events—(1) Cahn's initial interaction with defendant and passenger, (2) Cahn telling the sheriff's officers that they could leave the scene potentially leaving him outnumbered, (3) Cahn's brief conversation with Russo where he mentions the

"smell [of] marijuana," (4) Cahn's unexplained reversal to have sheriff's officers stay on the scene and going back to his patrol car to request for backup, and (5) when asked for a reason for his request, Cahn going back to defendant's vehicle for a moment and then report "[g]ot odor"—the record demonstrates that prior to Russo mentioning the smell of marijuana, Cahn did not believe that a criminal activity had occurred "in his presence" giving him the "right to arrest" defendant. Myers, 442 N.J. Super. at 297. Instead, up to the time that Russo told him that he smelled marijuana, Cahn's actions indicated that he intended to treat the single car accident as an accident and nothing more.

In addition, neither Cahn nor the sheriff's officers who handled defendant's black bag before or after the arrest indicated that the smell of raw marijuana emanated from the bag. Moreover, there was no indication that Cahn considered defendant, who was near the black bag, as the source of the smell. Indeed, it was only after an extensive search of defendant, his passenger, and the vehicle that Cahn searched the black bag, which was sitting on top of his patrol car after being outside away from the car since before Cahn appeared on the scene, when he finally found a small bag of marijuana wrapped in a plastic bag. It follows that if such small quantity of marijuana was emanating such a strong smell, the black bag would have been the subject of the initial search. As

14

Judge Tober found, despite Cahn's training in detecting the odor of marijuana, it strained credulity that Cahn could have smelled such small quantity of marijuana that was located fifteen to twenty feet away from the vehicle wrapped in a plastic bag that was located within the black bag that had been sitting outside since his arrival, if not sooner.

Accepting as we must the judge's credibility determination and findings of fact that are amply supported by the evidence, we have no cause to disturb Judge Tober's conclusion that the State did not meet its burden to prove the search of the bag was lawful under the circumstances. Based on the trial judge's findings and taking into consideration the totality of circumstances before defendant's arrest, we agree with Judge Tober's conclusion that Cahn did not have probable cause to arrest defendant and therefore no cause to search the black bag.

Had the judge found Cahn's explanation credible, it would have supported defendant's arrest and seizure of the bag. See Dangerfield, 171 N.J. at 457. Even defendant concedes as much. But, again, the judge did not make that finding. Instead, he found Cahn's explanation incredible.

We find no merit to the State's additional argument that there was probable cause to search the vehicle and its occupants, including the black bag, under the

automobile exception to the warrant requirement.  It cites, State v. Alston, 88 N.J. 211 (1981), to support the proposition that "our Supreme Court held that roadside searches are permissible when supported by probable cause and police do not know the facts giving rise to the probable cause beforehand" and only limits a warrantless search when the officer "elect[s] to tow a vehicle back to headquarters."  According to the State, under "Witt and Alston roadside searches are permissible" because the Witt Court held that it "made clear in Alston that merely because 'the particular occupants of the vehicle may have been removed from the car, arrested, or otherwise restricted in their freedom of movement, police were not required to secure a warrant.'"

According to the State, Alston's rule is only limited by an officer's decision to "tow a vehicle back to headquarters," which triggers the necessity for a warrant.  It contends that it is within the "police discretion" to decide whether to tow a vehicle and then secure a warrant or conduct a roadside search, "provided [that] Witt's standard is met."  It reasons that, "[c]ourts are not suited to second guess those determinations and the well-established case law makes clear that either is allowed."  It further argues that the trial judge "scrutinize[d] decisions made by . . . Cahn that were entirely in his discretion and completely irrelevant to the legality of the search."

We agree that <u>Alston</u> authorized warrantless roadside automobile searches based on probable cause arising from unforeseeable and spontaneous circumstances. 88 N.J. at 233. <u>See also</u> <u>Witt</u>, 223 N.J. at 447-48 (reviving the <u>Alston</u> rule). However, the issue here was not whether Cahn could have conducted a warrantless search prior to defendant's warrantless arrest, but whether Cahn could rely on the automobile exception to the warrant requirement <u>after</u> he had placed defendant under arrest and secured him in his patrol car. Under <u>Witt</u>, once a vehicle's driver has been removed, arrested, and secured, the automobile exception to the warrant requirement cannot be invoked. <u>See id.</u>, at 446-447, 448-449 & n.9. In any event, the State's argument that it was within Cahn's discretion whether to search the vehicle at the scene or seek a warrant after impounding the vehicle is irrelevant because the trial judge did not base any of his findings on the impounding of defendant's vehicle, nor did the roadside search of the vehicle yield any contraband.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3476-20